# Exhibit "1"

Exhibit
"1"

2012-2017
Memorandum of Understanding
Between
The City of New York
and
The Patrolmen's Benevolent Association

MEMORANDUM OF UNDERSTANDING made this 31st day of January, 2017 ("2012-2017 PBA MOU") by and between the undersigned Patrolmen's Benevolent Association of the City of New York, Inc. (the "Union"); and the City of New York (the "City").

WITNESSETH

WHEREAS, the undersigned parties desire to enter into a collective bargaining agreement, including this 2012-2017 Patrolmen's Benevolent Association Memorandum of Understanding ("2012-2017 PBA MOU"), and an agreement successor to the Agreement between the Employer and the Union that expired on July 31, 2012 (the "CBA"), to cover the employees represented by the Union ("Employees");

WHEREAS, the undersigned parties intend by this 2012-2017 PBA MOU to cover all economic matters including wages, duty schedules, and work rule modifications, and to incorporate the terms of this 2012-2017 PBA MOU into the Successor Separate Unit Agreement covering the period from August 1, 2012 through July 31, 2017;

NOW, THEREFORE, it is jointly agreed as follows:

Section 1.   Term

The term of the successor collective bargaining agreement shall cover the period from August 1, 2012 through July 31, 2017.

Section 2.   Continuation of Terms

The terms of the predecessor separate unit agreement, including side letters, shall be continued, except as modified pursuant to this 2012-2017 PBA MOU and the attached side letters.

Section 3.   General Wage Increases

a.   Effective August 1, 2012, Employees shall receive a general increase of one percent (1%).

b.   Effective August 1, 2013, Employees shall receive a general increase of one percent (1%).

c.   Effective August 1, 2014, Employees shall receive a general wage increase of one and a half percent (1.5%).

d.   Effective August 1, 2015, Employees shall receive a general wage increase of two and a half percent (2.5%).

e. Effective August 1, 2016, Employees shall receive a general wage increase of three percent (3%).

f. The increases provided for in Section 3 shall be calculated as follows:

  i. The general increase in Section 3(a) shall be based upon the base rates (including salary or increment salary schedules) in effect on July 31, 2012.

  ii. The general increase in Section 3(b) shall be based upon the base rates (including salary or increment salary schedules) in effect on July 31, 2013.

  iii. The general increase in Section 3(c) shall be based upon the base rates (including salary or increment salary schedules) in effect on July 31, 2014.

  iv. The general increase in Section 3(d) shall be based upon the base rates (including salary or increment salary schedules) in effect on July 31, 2015.

  v. The general increase in Section 3(e) shall be based upon the base rates (including salary or increment salary schedules) in effect on July 31, 2016.

**Section 4.**   New Hire Salary Schedule

For Police Officers hired on/after March 15, 2017, the following salary schedule shall apply:

| | |
|---|---|
| First 1.5 Years | $42,500 |
| After 1.5 Years | $45,000 |
| After 2.5 Years | $46,000 |
| After 3.5 Years | $47,000 |
| After 4.5 Years | $51,000 |
| After 5.5 Years | $85,292 |

**Section 5.**   Vacation

Effective March 15, 2017, the vacation schedule for Employees hired on or after July 1, 2008 shall be as follows:

| | |
|---|---|
| In the 1st year of service: | 10 days |
| In the 2nd year of service: | 12 days |
| In the 3rd and 4th years of service: | 14 days |
| In the 5th year of service | 15 days |
| In the 6th year of service: | 21 days |
| Following 6 years of service: | 27 days |

Incumbent employees shall receive the better of the current schedule and the new schedule.

**Section 6.**   Neighborhood Policing

a. The Union agrees to withdraw the case docketed as BCB No. 4103-13, with prejudice.

b. The parties recognize that Employees may be required to wear body-worn cameras as a term and condition of employment. The Department shall provide the Union with copies of Patrol

Guide Procedures related to mandatory body-worn cameras for review and comment before publication.

c.  In addition to the foregoing, the Union agrees to withdraw and/or refrain from pursuing litigation related to the administration of naloxone, and that such duties are a term and condition of employment.

d.  Effective March 15, 2017, Employees shall be entitled to a neighborhood policing differential in the amount of 2.25% of base salary, i.e. not including longevity or other differentials. The differential shall be treated as salary for purposes of computing overtime and holiday pay, and shall be pensionable.

**Section 7.    Annuity**

For Employees hired on or after March 15, 2017, the annuity contribution shall be eliminated in the first five years of service.

**Section 8.    Terminal Leave**

The resolution of the Board of Estimate of the City of New York dated June 27, 1957, states the following:

> *Members of the Force shall be granted terminal leave with pay upon retirement not to exceed one month for every ten years of service, pro-rated for a fractional part thereof, provided, however, that no terminal leave shall be granted to an employee against whom departmental disciplinary charges are pending.*

Effective March 15, 2017, the parties agree that such Employees as described in the Resolution above and are entitled to payment shall now be entitled to voluntarily choose the option of a one-time lump sum payment as their terminal leave benefit in lieu of their current terminal leave benefit prior to retirement. Such payments shall be made as soon as practicable after retirement.

In the event that a change in legislation is needed to effectuate this agreement, the parties agree to jointly support the necessary legislation to implement the terms of this Section.

**Section 9.    Health Savings**

The May 5, 2014 and May 11, 2016 letter agreements regarding health savings and welfare fund contributions between the City of New York and the Municipal Labor Committee, will be attached as an Appendix, and are deemed part of this 2012-2017 PBA MOU and incorporated in the Successor Unit Agreement.

The Union agrees to withdraw the case docketed as Index No. 652620/2016 and other litigation (including A-15175-16) related to the underlying dispute. The City agrees to withdraw the case docketed as BCB-4176-16.

This Agreement does not waive any rights the PBA has regarding future MLC agreements, or any rights the PBA has to negotiate healthcare or welfare fund matters in future bargaining with the City of New York.

Section 10.   Retroactivity

In the event that any payment is not paid on the date due under this 2012-2017 PBA MOU, such payment when made shall be paid retroactive to such date due.

Section 11.   Conditions of Payment

The general wage increases pursuant to Section 3 of this 2012-2017 PBA MOU shall be payable as soon as practicable upon ratification of the 2012-2017 PBA Agreement. This Section does not in any way limit or modify Article XVI, Section 13 of the collective bargaining agreement.

Section 12.   Incorporation of Provisions

The provisions of this 2012-2017 PBA MOU shall be deemed incorporated into the Successor Unit Agreement as if they had been originally contained therein.

Section 13.   Resolution of Disputes

In the event of a dispute regarding the implementation or interpretation of this 2012-2017 PBA MOU, either party may refer such dispute to binding arbitration before Martin F. Scheinman.

Section 14.   Savings Clause

In the event that any provision of this MOU is found to be invalid by a court of law, administrative body, or other tribunal having jurisdiction, such invalidity shall not impair the validity and enforceability of the remaining provisions of this 2012-2017 PBA MOU. The parties shall meet to endeavor to renegotiate any such invalid provision so that the invalidity is overcome.

Section 15.   Ratification

This Agreement is subject to ratification by the Union and adoption by the City of New York.

WHEREFORE, we have hereunto set our hands and seals this 31st day of January, 2017.

FOR THE CITY OF NEW YORK

BY: _____
ROBERT W. LINN
Commissioner of Labor Relations

FOR THE PATROLMEN'S BENEVOLENT ASSOCIATION

BY: _____
PATRICK J. LYNCH
President



# OFFICE OF LABOR RELATIONS
40 Rector Street, New York, N.Y. 10006-1705
nyc.gov/olr

**ROBERT W. LINN**
*Commissioner*

**RENEE CAMPION**
*First Deputy Commissioner*

**CLAIRE LEVITT**
*Deputy Commissioner*
*Health Care Cost Management*

MAYRA E. BELL
General Counsel

GEORGETTE GESTELY
Director, Employee Benefits Program

Patrick J. Lynch
President
Patrolmens Benevolent Association
125 Broad Street, 11th Floor
New York, New York 10004

Dear Mr. Lynch:

The parties agree to complete and unequivocal support for State legislation to provide for an amendment of the disability pension benefit consistent with the recently enacted law covering members of the FIRE Pension Plan, except that the initial employee contribution shall be 1.0%. The parties agree to jointly support a "Home Rule" message in order to enact such legislation.

The parties agree that they will not support or advocate for alternative legislation.

If the above conforms to your understanding, please countersign below.

Very truly yours,

Robert W. Linn
Commissioner

PATROLMENS BENEVOLENT ASSOCIATION
AGREED AND ACCEPTED BY:

Patrick J. Lynch



THE CITY OF NEW YORK
# OFFICE OF LABOR RELATIONS
40 Rector Street, New York, NY 10006-1705
http://nyc.gov/olr

**ROBERT W. LINN**
*Commissioner*

May 5, 2014

Harry Nespoli
Chair, Municipal Labor Committee
125 Barclay Street
New York, NY 10007

Dear Mr. Nespoli:

This is to confirm the parties' mutual understanding concerning the following issues:

1. Unless otherwise agreed to by the parties, the Welfare Fund contribution will remain constant for the length of the successor unit agreements, including the $65 funded from the Stabilization Fund pursuant to the 2005 Health Benefits Agreement between the City of New York and the Municipal Labor Committee.

2. Effective July 1, 2014, the Stabilization Fund shall convey $1 Billion to the City of New York to be used to support wage increases and other economic items for the current round of collective bargaining (for the period up to and including fiscal year 2018). Up to an additional total amount of $150 million will be available over the four year period from the Stabilization Fund for the welfare funds, the allocation of which shall be determined by the parties. Thereafter, $60 million per year will be available from the Stabilization Fund for the welfare funds, the allocation of which shall be determined by the parties.

3. If the parties decide to engage in a centralized purchase of Prescription Drugs, and savings and efficiencies are identified therefrom, there shall not be any reduction in welfare fund contributions.

4. There shall be a joint committee formed that will engage in a process to select an independent healthcare actuary, and any other mutually agreed upon additional outside expertise, to develop an accounting system to measure and calculate savings.

5. The MLC agrees to generate cumulative healthcare savings of $3.4 billion over the course of Fiscal Years 2015 through 2018, said savings to be exclusive of the monies referenced in Paragraph 2 above and generated in the individual fiscal years as follows: (i) $400 million in Fiscal Year 2015; (ii) $700 million in Fiscal Year 2016; (iii) $1 billion in Fiscal Year 2017; (iv) $1.3 billion in Fiscal Year 2018; and (v) for every fiscal year thereafter, the savings on a citywide basis in health care costs shall continue on a recurring basis. At the conclusion of Fiscal Year 2018, the parties shall calculate the savings realized during the prior four-year period. In the event that the MLC has generated more than $3.4 billion in cumulative healthcare savings during the four-year period, as determined by the jointly selected healthcare actuary, up to the first $365 million of such additional savings shall be credited proportionately to each union as a one-time lump sum pensionable bonus payment for its members. Should the union desire to use these funds for other purposes, the parties shall negotiate in good faith to attempt to agree on an appropriate alternative use. Any additional savings generated for the four-year period beyond the first $365 million will be shared equally with the City and the MLC for the same purposes and subject to the same procedure as the first $365 million. Additional savings beyond $1.3 billion in FY 2018 that carry over into FY 2019 shall be subject to negotiations between the parties.

6. The following initiatives are among those that the MLC and the City could consider in their joint efforts to meet the aforementioned annual and four-year cumulative savings figures: minimum premium, self-insurance, dependent eligibility verification audits, the capping of the HIP HMO rate, the capping of the Senior Care rate, the equalization formula, marketing plans, Medicare Advantage, and the more effective delivery of health care.

7. Dispute Resolution

   a. In the event of any dispute under this agreement, the parties shall meet and confer in an attempt to resolve the dispute. If the parties cannot resolve the dispute, such dispute shall be referred to Arbitrator Martin F. Scheinman for resolution.
   b. Such dispute shall be resolved within 90 days.
   c. The arbitrator shall have the authority to impose interim relief that is consistent with the parties' intent.
   d. The arbitrator shall have the authority to meet with the parties at such times as the arbitrator determines is appropriate to enforce the terms of this agreement.
   e. If the parties are unable to agree on the independent health care actuary described above, the arbitrator shall select the impartial health care actuary to be retained by the parties.
   f. The parties shall share the costs for the arbitrator and the actuary the arbitrator selects.

If the above accords with your understanding and agreement, kindly execute the signature line provided.

Sincerely,

*[signature]*

Robert W. Linn
Commissioner

Agreed and Accepted on behalf of the Municipal Labor Committee

BY: *[signature]*
Harry Nespoli, Chair

3



## OFFICE OF LABOR RELATIONS

40 Rector Street, New York, N.Y. 10006-1705
nyc.gov/olr

ROBERT W. LINN
*Commissioner*
RENEE CAMPION
*First Deputy Commissioner*
CLAIRE LEVITT
*Deputy Commissioner*
*Health Care Cost Management*

MAYRA E. BELL
*General Counsel*
GEORGETTE GESTELY
*Director, Employee Benefits Program*

May 11, 2016

Harry Nespoli
President
Uniformed Sanitationmen's Association, Local 831 IBT
25 Cliff Street - 2nd Floor
New York, NY 10038

Re: 2016 Agreement between the City of New York and the Municipal Labor Committee Regarding the One-Time Lump Sum Payment of $100 to the Welfare Funds

Dear Harry Nespoli:

As memorialized in a February 19, 2016 written letter agreement (attached) between the City of New York ("City") and the Municipal Labor Committee ("MLC"), "[t]he City has agreed to authorize the release of $100 per active employee and retiree to the welfare funds from the [Health Benefits] Stabilization Fund". The one-time lump sum payment of $100 will be paid to the welfare funds as of July 1, 2016, the effective date of the agreed upon changes set forth in the February 19, 2016 letter agreement.

The payment to the welfare funds shall be made on behalf of each full time per annum employee and retiree or other applicable equivalent for other than full time per annum employees or retirees eligible for welfare fund contributions on July 1, 2016. For other than full time per annum employees and retirees, payment shall be in accordance with the applicable welfare fund agreement.

In order to implement the payment to the welfare funds, as referenced in the February 19, 2016 letter agreement, kindly indicate your agreement to modify your individual Welfare Fund agreement, in accordance with what was previously agreed to by the City and the MLC, and to incorporate such amendment into your Welfare Fund agreements by affixing your signature in

1

the space provided below. Please return the signed letter to Georgette Gestely, Director, Employee Benefits Program.

Thank you for your cooperation.

Very truly yours,

*[signature]*

Robert W. Linn


Agreed and Accepted on behalf of the Union

BY: *[signature]*

2



# OFFICE OF LABOR RELATIONS
40 Rector Street, New York, N.Y. 10006-1705
nyc.gov/olr

**ROBERT W. LINN**
*Commissioner*
**RENEE CAMPION**
*First Deputy Commissioner*
**CLAIRE LEVITT**
*Deputy Commissioner*
*Health Care Cost Management*



**MAYRA E. BELL**
*General Counsel*
**GEORGETTE GESTELY**
*Director, Employee Benefits Program*

February 19, 2016

Mr. Harry Nespoli
Chair, Municipal Labor Committee
125 Barclay Street
New York, NY 10007

Dear Mr. Nespoli:

I am extremely pleased that the City and the Municipal Labor Committee have reached another agreement regarding securing the health savings for Fiscal Year 2016 and 2017. I want to thank you and all of the members of the Municipal Labor Committee Health Insurance Policy Committee for the exhaustive efforts to get this finalized. We should all be especially proud of having achieved these unprecedented savings in a collaborative working relationship, and in the context of providing access to plans that emphasize the health of our employees through a focus on access to primary and preventive care.

Attached is a chart that itemizes the total savings projections for the benefit plan design changes agreed upon. There is also a chart that demonstrates how the changes get us to the FY 2016 and 2017 health care savings targets. The savings estimates have been agreed upon by both Milliman, the City's actuary, and Segal, the Municipal Labor Committee's actuary.

The total of the carryover from FY 2016 savings to FY 2017, along with our other new programs, is expected to be approximately $851.8 million before the plan design changes. We are projecting the new plan design changes to result in $149.1 million savings, allowing us to achieve the $1 billion target for Fiscal Year 2017.

For FY 2016, we expect to achieve $653 of the $700 million target if we implement the changes June 1, and there will have to be a $47 million adjustment paid from the Stabilization Fund. If the implementation of the plan design changes is delayed to July 1, 2016, the FY 2016 savings will be reduced to $642 million and will require a $58 million adjustment from the Stabilization Fund.

As we have done previously, the savings are based on estimates and there will be a true up process after the end of each fiscal year. When the final savings are determined, they will be accounted for in the following two ways:

<u>Direct Savings:</u> These savings are from healthcare programs and initiatives that result in a lower amount directly paid by the City through a reduction for employee healthcare costs in the HIP-HMO and the GHI Senior Care rates, and the City headcount resulting from the Dependent Eligibility Verification Audit (DEVA).

Page 2

<u>Savings Off the Equalization Payment:</u> These savings are from healthcare programs and initiatives that do not accrue directly to the City and will be deemed as an offset to the equalization payment due by the City to the Stabilization Fund. The equalization payment, due from the City to the Stabilization Reserve Fund, represents the difference between the HIP-HMO rate and the GHI-CBP rate.

The cost estimates are also based on the HIP HMO retaining its status as a grandfathered plan, as supported by the attached letter from Emblem Health which indicates that "the contemplated changes should not adversely affect the CNY HMO Plan's grandfather health plan status."

I have also attached a letter from the City of New York Law Department indicating that the proposed changes to the HIP- HMO Preferred Plan comport with the requirements of Administrative Code Section 12-126(b)(1).

As agreed previously, the ongoing cost of the preventive procedures, visits and drugs incurred as the result of the CBP losing its grandfathered status, will be paid from the Stabilization Fund (estimated at $48.3 million for FY 2017).

The City has agreed to authorize the release of $100 per active employee and retiree to the welfare funds from the Stabilization Fund effective June 1, 2016 (or whenever the proposed changes go into effect), primarily to provide relief for the escalating costs of prescription drugs. It was also agreed that the Stabilization Fund would release an equivalent amount to the City as of that date.

We look forward to continuing our work on health care savings and the very real potential of being able to share some of the savings with employees should we exceed the $3.4 billion target.

Sincerely,

Robert Linn
Commissioner

Cc: Willie Chang
Arthur Pepper
Claire Levitt

Agreed: _____   2/22/16
Harry Nespoli, Chair, Municipal Labor Committee   Date